**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**Case No.:**

STABLETRACKER.COM, INC.,

       Plaintiff,

-v-

ROBERT SEITZ, and MY SUPPORT
SERVICES GROUP, LLC,

       Defendants.

_____/

## VERIFIED COMPLAINTFOR INJUNCTIVE RELIEF AND DAMAGES

      Plaintiff, Stabletracker.com, Inc. ("StableTracker" or "Plaintiff"), sues Defendants, Robert Seitz ("Seitz"), and My Support Services Group, LLC, ("MSSG"; Seitz and MSSG are collectively, the "Defendants"), and alleges:

### SUBSTANCE OF THE ACTION

      1.    This is an action against plaintiff's former contractors based on their misappropriation of plaintiff's trade secrets including computer software and source-code; conversion of plaintiff's Internet domain name, software, and logo; violation of plaintiff's copyrights in computer source code; civil theft; breach of fiduciary duty; deceptive and unfair trade practices under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); and unfair competition under the common law of Florida. Plaintiff seeks injunctive relief and damages.

### JURISDICTION AND VENUE

      2.    This Court has subject matter jurisdiction under 28 U.S.C. § 1338(b) as the district courts have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright or trademark laws

1

3.      This Court has personal jurisdiction over defendants under section 48.193, Florida Statutes.  Defendants transact and solicit business in Miami-Dade County, Florida.  Defendants have caused injury in Miami-Dade County, Florida by making and uploading and/or hosting their infringing web sites and products available to countless users within Miami-Dade County, Florida, and have regularly solicited and conducted business through their interactive and commercial web site directed to users within Miami-Dade County, Florida. As a result, upon information and belief, defendants have gained or intend to gain substantial revenues from infringing goods sold over the Internet in Miami-Dade County, Florida to the detriment of plaintiff.  On information and belief, these activities were conducted with the purpose of injuring plaintiff, and defendants reasonably expected that plaintiff would suffer injury in Miami-Dade County, Florida through defendants' activity.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b)-(c) in that a substantial part of the events or omissions giving rise to the claims, including the infringing conduct complained of herein, occurred in this District, and defendants are transacting business and/or residing in this District, including the sale of the infringing products.

## THE PARTIES

5.      StableTracker is a corporation organized and existing under the laws of the state of Florida, which maintains its principal place of business and carries out its core executive and administrative functions in Broward County, Florida.

6.      Seitz is an individual, *sui juris*, who does business in Miami, Florida including as the Chief Technology Officer of co-defendant, MSSG, with offices in  Miami-Dade County, Florida.

7.      MSSG purports to be a limited liability company, with offices in Miami-Dade County, Florida. MSSG was neither organized under the laws of the state of Florida nor registered to do business in the state of Florida, nor is it a registered fictitious name. Nonetheless, its websites (http://www.mssg.us and http://mysupportservicesgroup.com ) state a place of business in Miami-Dade County, Florida. Upon information and belief, Seitz operates MSSG from his residence.

2

8.      Upon information and belief defendant Seitz directs and controls the acts of MSSG and profits directly from it.

## PRELIMINARY STATEMENT

9.      The Internet is a worldwide network of computers through which businesses and individuals can send nearly instantaneous electronic mail (e-mail) communications and other information. For companies or individuals wishing to sell products or services via the Internet, the Internet acts as a national retail store, allowing individuals from each state in the country to view pictures and descriptions of products and services, and purchase products or services directly through the Internet or through a phone call, fax or mail order.

10.     An organization or individual may provide software or software-based services on the Internet's Worldwide Web by hosting computer source code on a web site. Such an organization or individual may also present software for use by and through a web site from its place of business, the servers that host the web site(s), or by uploading the content to remote servers. A web site is a specific location on the Worldwide Web identified by a unique address known as a domain name or a Universal Resource Locator ("URL"). Consumers can visit a web site by typing in the specific URL such as defendants' addresses, http://www.stabletracker.com or the like. The part of the address after the dot, or period, is a general indicator of the type of site; the "com" designation indicates a commercial site.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

StableTracker's Software

11.     Over the past two and one-half years, StableTracker has been developing software for the trotting-horse industry. The software has been designed to present a web-based, management software for consumers and end-users in that field. In other words, the consumers would visit StableTracker's URL and utilize the software from StableTracker's web site.

12.     Over this time, StableTracker has expended more than $100,000 on the development of the software and its source code (the "Software").

13.     StableTracker hired software developer Mr. Bhushan Kumar ("Kumar") to develop the Software.

3

14.     Kumar subcontracted subordinate-programmers in India and supervised the development of the Software.

15.     Kumar issued invoices and collected payment from StableTracker.

16.     StableTracker and its promoter have continuously used the mark stabletracker.com and directed StableTracker's agent to register the URL on May 12, 2008.

17.     StableTracker has used the URL, stabletracker.com, continuously since May 12, 2008, and also uses the URL as its formal, corporate name: Stabletracker.com, Inc., since its formation on July 15, 2009.

18.     StableTracker and its promoter have been using the stabletracker.com mark since at least May 12, 2008.

19.     The designation stabletracker.com, as used for StableTracker's products and web site is arbitrary and unique.

20.     In the United States, StableTracker offered or intends to offer web-based software only through its own URL. StableTracker's very corporate name uses the mark, stabletracker.com, and StableTracker maintains the web site and URL www.stabletracker.com. As a result of the dispute described herein, StableTracker has deactivated its web site but normally the URL and web site feature StableTracker's color logo (the "**Logo**") and offer or will offer the Software.

21.     As a result of extensive efforts by StableTracker, the stabletracker and stabletracker.com trademark have an intended use that builds upon more than 2 ½ years of work and more than $100,000.00 invested. StableTracker places an enormous value on this trademark and the goodwill of the business associated therewith.

22.     StableTracker used a software development team lead by Kumar, which issued invoices for services rendered and were paid by StableTracker.

23.     Plaintiff is the owner of the copyrights in its source code comprising the Software, and the Logo.

24.     To function, the Software relies upon data acquired from, or furnished by the U.S. Trotting Association, a governing body in the industry.

4

25.     StableTracker has a signed letter of intent with the U.S. Trotting Association through which it will accumulate the data necessary for the Software.

26.     The Software's utility and function is dependent upon StableTracker's relationship and contract with the U.S. Trotting Association. Without this business relationship, the Software would be obsolete and without use to potential clients.

27.     StableTracker developed a relationship with the U.S. Trotting Association through the existing business relationships of its promoter and sole shareholder, Joel Benson ("Benson"). As an owner of competing horses, Benson has been a certified member of the U.S. Trotting Association since 2007 and was familiar with its officers and executives. Based on his relationships, goodwill, and reputation, Benson was able to set up a meeting between StableTracker and executives of the U.S. Trotting Association in order to pitch StableTracker. StableTracker paid for Seitz to accompany Benson to the presentation, though Seitz had no prior relationship or goodwill with the organization or any of its officers. The first meeting went well enough that StableTracker attended a second meeting, this time bringing Kumar, Seitz, Benson, and a fourth consultant.

28.     As a result of this meeting, the U.S. Trotting Association signed a letter of intent with StableTracker.

29.     Upon information and belief, no such letter, contract, or agreement exists between the U.S. Trotting Association and Seitz.

Defendants' Unlawful Activities

30.     Defendants are in the business of providing information technology support to individuals and small businesses, including installation of wireless routers, document scanning, photo preservation, and web site design, as well as other services delineated on the website of MSSG at www.mysupportservicesgroup.com.

31.     StableTracker's sole shareholder, Benson, came to know Seitz and MSSG by using MSSG as the computer repair technicians for another, unrelated company.

5

32.    In the course of providing those services, defendants came to be familiar with Benson's involvement in horse racing. Benson had developed a spreadsheet in Microsoft Excel to manage his horses. This spreadsheet was the frame upon which the Software was built.

33.    StableTracker, through Benson, hired defendants to provide information technology support to StableTracker and directed defendants to undertake several tasks on behalf of StableTracker. StableTracker hired defendants to register and secure StableTracker's URL, www.stabletracker.com. StableTracker hired defendants to subcontract a graphic designer to design StableTracker's logo, (the "Logo"), a copy of which is below:



StableTracker hired defendants to host the Software and website on defendants' web hosting servers.

34.    Defendants generated and issued invoices for their fees in undertaking these and other tasks on behalf of StableTracker.

| | For professional services rendered | | |
|---|---|---|---|
| | Additional Charges : | | |
| | | Qty/Price | |
| | | 1 | 1,000.00 |
| 3/1/2010 RS | StableTracker Monthly Monthly work on Stabletracker Project | 1,000.00 | |

35.    Similarly, defendants generated and issued invoices for reimbursement of expenses for services and goods incurred or secured for the benefit of StableTracker.

6

36.    StableTracker received and paid these invoices.

37.    Among these expenses, StableTracker paid defendants to register the URL www.stabletracker.com on its behalf, including on February 11, 2009:

| 2/11/2009 RS | Domain Renewal<br>Domain Renewal for Stabletracker and Stabletracking. | 1<br>67.10 | 67.10 |
|---|---|---|---|

| 1/19/2009 RS | Go Daddy<br>Go Daddy SSL certificate for Stabletracker website for secure transactions. | 1<br>89.99 | 89.99 |
|---|---|---|---|

| 3/10/2010 RS | Technical Support<br>Technical Support - go daddy to reactivate the Stabletracker site | | |
|---|---|---|---|

38.    StableTracker paid defendants to host the Software on a web site under the URL www.stabletracker.com on its behalf, including on February 11, 2009:

| 2/21/2009 RS | Go Daddy<br>Go Daddy transfer and upgrade to hosting account | 1<br>56.88 | 56.88 |
|---|---|---|---|

| 3/10/2010 RS | Website Hosting<br>Website Hosting for Stabletracker | 1<br>60.00 | 60.00 |
|---|---|---|---|

39.    StableTracker remitted payment to defendants for the design of the Logo, after defendants subcontracted a graphic designer to generate the Logo on behalf of and for the benefit of StableTracker.

40.    After considerable expense and effort in developing the Software and preparing the launch of StableTracker, StableTracker offered equity in StableTracker to defendants and Kumar, in exchange for free services and consulting.

41.    In the interest of obtaining free or reduced-fee services, StableTracker also agreed to provide funds to Seitz that were to be construed as advances on shareholder-draws from the company. These payments began in 2008 and continued into 2011. In total, Seitz has been paid $30,590 in these advance-draws.

42.    In or around October 2010, StableTracker's counsel began negotiations with Seitz and non-party, Kumar, over an agreement to confer an equity-share in StableTracker. A draft agreement was circulated thereafter.

7

43.     By mid-April 2011, Seitz had not yet signed or commented on the draft agreement. Finally, after a prompt from StableTracker on the status of his review, Seitz commented:

> **From:** Robert [mailto:Robert@stabletracker.com]
> **Sent:** Tuesday, April 19, 2011 5:12 PM
> **To:** Joel Benson; 'Bhushan'
> **Subject:** RE: Partnership Papers
>
> I can't speak for Bhushan, but I won't be signing that agreement and have mine almost done from my meeting in New York last week. If your attorney thinks that raping a partner is a good way to start, then I can give him a "stop" to think about.

44.     As indicated above, therefore, StableTracker never formed an equity-sharing deal with Seitz, and Benson remains the sole shareholder to this day.

45.     In June 2011, StableTracker happened upon a website showing the registration of the trademark Stabletracker.com along with the Logo.

46.     It turns out that shortly after his April 19, 2011 e-mail, *supra*, Seitz unilaterally filed a registration for a trademark on May 4, 2011. The mark is registration number 85312458, which includes the work mark "STABLETRACKER" AND WWW.STABLETRACKER.COM, paired with StableTracker's Logo. A true and accurate copy of the U.S. Patent and Trademark Office's webpage reflecting the application for this registration is annexed hereto as **Exhibit 1** (highlight emphases added).

47.     StableTracker immediately contacted Seitz demanding an explanation and Seitz responded that the registration reflected his ownership of the intellectual property.

48.     Further investigation revealed that Seitz had registered the URL stabletracker.com in his own name, rather than for StableTracker.

49.     On or about June 17, 2011, StableTracker's legal counsel sent a cease and desist demand letter to defendants, directing defendants to sign enclosed agreements to transfer the URL to StableTracker, to transfer the trademark registered with the U.S. Patent and Trademark Office to StableTracker, and to provide the username and password to the website server/host

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida – (954) 566-7117

controlled by defendants in order for StableTracker to remove the Software. A true and accurate copy of this letter is annexed hereto as **Exhibit 2**.

      50.    Seitz responded to the June 17, 2011 letter with a cease and desist letter of their own, parroting language from StableTracker's letter and claiming:

> I, Robert Seitz, am the proprietor of all patents and trademarks associated with the software program entitled Stabletracker (The "Work"). We have reserved all rights in the Work, which was first expressed in material form with the United States Patent and Trademark Office in Washington D.C.

      51.    Seitz responded again, on June 20, 2011 and referenced defendants' efforts to market the Software to third-party competitors:

> We can, however, discuss licensing fees that I am prepared to negotiate as the Patent/Trademark owner of Stabletracker.com, if you would like, before I initiate discussions with another group. In the meantime, you are advised to Cease and Desist all activities, negotiations, discussions, etc. as it pertains to Stabletracker and the development or discussion of the software as of today at 5pm. Should I have to go into Court, my attorney's have advised me that they will be seeking compensation under F.S. 57.105, as well as a federal statute, that escapes me at the moment, that they are quite confident they will prevail on to.

A true and accurate copy of this letter is attached here as **Exhibit 3** (emphasis added).

      52.    StableTracker attempted to remedy the situation by accessing its website and retrieving the Software. In response, defendants threatened to retaliate:

9

| From: | Robert |
|---|---|
| To: | Mark Albright |
| Cc: | "Bhushan Kumar"; "Joel Benson" |
| Subject: | Access to stabletracker.com has now been locked out to any changes |
| Date: | Wednesday, June 22, 2011 11:56:33 AM |
| Attachments: | 1My Support Services Group.vcf |

Counsel,

Your client has logged into to change access to the Stabletracker.com site. Please be advised that he has now been locked out.

If your client makes any attempt to put StableTracker up elsewhere, or use any part of the formulas that I developed, I will go into USDC Fort Lauderdale for a federal injunction.

Robert
**Direct:  954-892-6121   Robert@MSSG.US    www.MSSG.US    Facebook**
**Remember, *Unless you're Amish - You need us!***

A true and accurate copy of this correspondence is attached here as **Exhibit 4**.

53.     Defendants are offering for sale StableTracker's Software. In recent correspondence with StableTracker, defendants have indicated their intent to market and license the Software to third parties. Defendants are undertaking this effort without the authorization and approval of StableTracker.

54.     Upon information and belief, defendants' are attempting to sell or license the Software through web sites or potential competitors of StableTracker.

55.     In marketing the Software, defendants have intentionally and without any authorization offered to sell or license StableTracker's copyrighted software code, trade secrets, and Logo.

56.     Defendants, who are not authorized distributors for the Software or Logo, are nonetheless attempting to market, license, and/or distribute this material.

57.     Disclosing the Software would provide a competitor of StableTracker with the product of more than 2 ½ years of development efforts and planning and more than $100,000 in expenses. A competitor would be able to immediately exploit the Software to unfairly compete with StableTracker. There are currently no competitors in this space, and upon receiving the

10

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida – (954) 566-7117

Software, a competitor would not only have the means to implement the method and business process but would race into the space and capture market share in a vacuum devoid of competitors.

58.     Upon information and belief, defendants have engaged in and are continuing to engage in the above conduct willfully, deliberately, and with intent to misappropriate StableTracker's trade secrets, brand, and intellectual property.

59.     Defendants' use of StableTracker's trademark, brand, URL, and copyrighted material places the valuable and future reputation and goodwill of StableTracker in the hands of defendants, over whom StableTracker has absolutely no control.

60.     Defendants will likely look to third-party competitors for licensing fees as Defendants are not able to launch the URL: At the time of filing, the URL and site, www.stabletracker.com, is effectively blank and still bears the June 1, 2011 launch date.

61.     Defendants' use of the STABLETRACKER brand or URL dilutes the distinctive quality of StableTracker's mark and URL and lessens their ability to function as a source indicator.

62.     On the morning of filing this pleading, June 27, 2011, Seitz – using an e-mail address from the URL (Robert@stabletracker.com) contacted a key representative of the U.S. Trotting Association.

63.     In this e-mail, Seitz again makes a claim to the "Stabletracker model," and all intellectual property, including the trademark, the Logo, the Software, and more based on up his registering the trademark. Seitz advises the U.S. Trotting Association to cease and desist in any business relationship with StableTracker and/or Benson. Seitz also – and falsely – represents to the U.S. Trotting Association that StableTracker has no right to use the Software or the mark, and that Seitz has issued a cease and desist demand to StableTracker.

64.     Also this morning, the U.S. Trotting Association wrote to StableTracker, acknowledged awareness of the legal dispute and indicated that the business relationship might proceed upon resolution of the dispute between StableTracker and defendants.

11

65.     StableTracker had initially planned to launch in June or July of this year. Recently, for the disputes described here, StableTracker is unable to launch and does not know when or if it will be able to launch.

66.     Upon information and belief, neither of the defendants has an independent, contractual or business relationship with the U.S. Trotting Association.

67.     Defendants had no prior business relationship with the U.S. Trotting Association prior to their service to StableTracker, and would not otherwise be familiar with any individual contacts or e-mail addresses of representatives of the U.S. Trotting Association.

68.     These acts have caused and will continue to cause irreparable injury to StableTracker unless enjoined by this Court. Plaintiff has no adequate remedy at law.

69.     All conditions precedent to bringing the instant action have occurred, been performed, and/or have otherwise been waived and/or excused.

70.     StableTracker has retained the undersigned attorneys to represent it in this action and is obligated to pay its attorneys reasonable fees and costs for their services.

**FIRST CLAIM FOR RELIEF**
**MISAPPROPRIATION OF TRADE SECRETS**
**(FLA. STAT. §§ 688.001 et seq.)**
**(Defendants)**

71.     StableTracker adopts and realleges paragraphs 1 through 70 above as if fully set forth herein.

72.     StableTracker has expended considerable resources to develop the Software, which is crucial to its operations in targeted industries.

73.     StableTracker makes reasonable efforts to maintain the secrecy of its trade secrets including maintaining password-protected and other protections to protect the Software from replication and exploitation by competitors.

74.     Defendants, through their association and agency for StableTracker, were respectively provided with variable amounts of access to StableTracker's trade secrets, including the Software, which defendants hosted on web servers controlled or owned by Defendants.

12

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida – (954) 566-7117

75.     Defendants, by improper means, misappropriated StableTracker's trade secrets including by locking StableTracker out of the web server hosting the Software and the URL.

76.     Defendants are attempting to utilize StableTracker's misappropriated trade secrets, including the Software, to gain a commercial advantage in direct competition with StableTracker and have done so willfully, with an interest in their own pecuniary gain, with malice.

77.     Defendants have knowledge of StableTracker's critical, contractual relationship with the U.S. Trotting Association, including the identity and e-mail addresses of individual representatives of that organization solely by and through defendants' service to StableTracker.

78.     On or about June 27, 2011, Seitz contacted the key representative of the U.S. Trotting Association noting his disassociation with StableTracker and purporting to offer sole means of licensing the Software to or with the U.S. Trotting Association. In so doing, Seitz is further misappropriating the Software for his own use.

79.     StableTracker has been damaged and continues to be damaged by defendants' misappropriation of StableTracker's trade secrets.

80.     In addition to damages, defendants have indicated a willingness and intent to sell and/or license the Software and registered trademarks to third-party competitors. In that event, StableTracker would have no adequate remedy at law.

WHEREFORE, STABLETRACKER.COM, INC. requests that the Court enter a judgment in its favor and against defendants:

     a.     awarding actual damages pursuant to Fla. Stat. § 688.004(1);

     b.     awarding exemplary damages pursuant to Fla. Stat. § 688.004 (2);

     c.     awarding attorneys' fees pursuant to contract and Fla. Stat. § 688.005;

     d.     awarding pre-judgment and post-judgment interest on any award;

     e.     enjoin defendants from further wrong-doing, and to return all confidential material and trade secrets, including the Software to plaintiff ; and

     f.     granting such other and further relief as the Court deems just and proper.

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida – (954) 566-7117

## SECOND CLAIM FOR RELIEF
## UNJUST ENRICHMENT
### (Defendants)

81.     StableTracker adopts and realleges paragraphs 1 through 70 above as if fully set forth herein.

82.     Defendants have assumed control of the Software, the Logo, the URL (stabletracker.com), and the brand stabletracker and stabletracker.com, which material was conferred on defendants by StableTracker.

83.     StableTracker has conferred payment upon defendants in consideration for work performed as agents of StableTracker, and expenses incurred on behalf of StableTracker for items such as generation of the Logo, registration of the URL, hosting of StableTracker's website, and payment for defendants' services to StableTracker.

84.     StableTracker has also conferred approximately $30,000 in the form of an advance on a shareholder draw to Seitz.

85.     Defendants have knowledge of the benefits conferred by StableTracker.

86.     Defendants accepted and retain the subject benefits.

87.     Under the circumstances, it would be inequitable for defendants to retain those benefits without paying for them. For example, StableTracker has paid more than $100,000 to Kumar for development of the Software. Seitz now claims to be the sole proprietor of same. the Software.

88.     In the very course of defendants being unjustly enriched, StableTracker has been directly and proximately damaged.

WHEREFORE, STABLETRACKER.COM, INC. requests that the Court enter a judgment in its favor and against defendants:

a.     awarding actual damages;

b.     awarding pre-judgment and post-judgment interest on any award; and

c.     granting such other and further relief as the Court deems just and proper.

14

**THIRD CLAIM FOR RELIEF**
**BREACH OF FIDUCIARY DUTY**
**(Defendants)**

89.     StableTracker adopts and realleges paragraphs 1 through 70 above as if fully set forth herein.

90.     StableTracker has expended considerable resources to develop, *inter alia*, the Software, Logo, the URL, a business relationship with the U.S. Trotting Association, and the business plan and concepts.

91.     In the course of doing so, StableTracker hired and compensated defendants.

92.     At certain points in time, StableTracker anticipated making Seitz a shareholder with a 10% interest in the company.

93.     Through the course of their duties, defendants developed a confidential relationship with StableTracker, wherein they were necessarily exposed to business concepts, software source code, the Software, client relationships and strategies, the URL, the website, and more.

94.     This confidential relationship was one of principal (StableTracker) and agents (defendants).

95.     Through their agency, including safeguarding and hosting of the Software, through the negotiations and discussions that were to make Seitz a shareholder of the company, defendants undertook a fiduciary duty to StableTracker. Through that duty and relationship, defendants assumed a duty to advise, counsel, and/or protect StableTracker.

96.     In taking the unlawful actions described herein, defendants have violated the trust reposed in them by StableTracker, misappropriating StableTracker's intellectual property and interfering with business relationships for their own pecuniary gain.

97.     These unlawful actions constitute a breach of defendants' fiduciary duty.

98.     StableTracker has been damaged by defendants' wrongful acts and breach.

WHEREFORE, STABLETRACKER.COM, INC. requests that the Court enter a judgment in its favor and against defendants:

    a.     awarding actual damages;

15

    b.      awarding punitive damages;

    c.      awarding pre-judgment and post-judgment interest on any award; and

    d.      granting such other and further relief as the Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**
**CIVIL THEFT**
**§ 772.11, FLORIDA STATUTES**
**(Seitz)**

99.    StableTracker adopts and realleges paragraphs 1 through 70 above as if fully set forth herein.

100.    StableTracker has conferred $30,590 in the form of an advance on a shareholder draw to Seitz.

101.    Seitz knowingly took $30,590 as an advance on an equity-draw in StableTracker.

102.    But Seitz did not intend to an owner of the company. Rather, he obtained draw with felonious intent as part of his years-long scheme to co-opt the URL, the Software, and StableTracker's intellectual property.

103.    Seitz undertook these actions and the unlawful conduct described throughout to permanently deprive StableTracker of its right to benefit from the $30,590 and to appropriate those funds for his own use, incompatible with the purpose for which they were offered.

104.    Seitz began his scheme in 2007, when he registered the URL in his own name, instead of StableTracker, Benson, or another assignee of the name.

105.    Concurrent with service of this pleading, StableTracker is issuing a statutory warning in an effort to resolve this claim.

106.    Absent compliance with the statutory notice, including timely refund of all draw-funds, StableTracker intends to seek exemplary damages and attorneys' fees and costs.

WHEREFORE, STABLETRACKER.COM, INC. requests that the Court enter a judgment in its favor and against Seitz:

    a.      awarding actual damages;

    b.      awarding exemplary damages if the statutory conditions are met;

    c.      awarding attorneys' fees and costs;

16

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida – (954) 566-7117

     d.      awarding pre-judgment and post-judgment interest on any award; and

     e.      granting such other and further relief as the Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
**CONVERSION**
**(Defendants)**

107.    StableTracker adopts and realleges paragraphs 1 through 70 above as if fully set forth herein.

108.    StableTracker presented the Software, URL, Logo, and other confidential material, trade secrets, and property to defendants in the course of defendants' agency, employment, and services to StableTracker.

109.    Defendants have asserted exclusive dominion over the Software, URL, Logo, through cease and desist communications with StableTracker, the U.S. Trotting Association, and through the improper registration with the U.S. Patent and Trademark Office.

110.    The Software, URL, Logo and other intellectual property seized by defendants are the rightful property of StableTracker, and StableTracker has the sole right of possession of same.

111.    StableTracker has made a demand through its legal counsel for the return of the subject property but defendants have refused.

112.    Defendants' refusal to return the property is a wrongful exercise of dominion.

WHEREFORE, STABLETRACKER.COM, INC. requests that the Court enter a judgment in its favor and against defendants:

     a.    adjudicating plaintiff's rights to be superior to those of defendants;

     b.    ordering the return of the property at issue to plaintiff;

     c.    alternatively in conjunction therewith, awarding damages to plaintiff along with pre-judgment and post-judgment interest on any award; and

     d.    granting such further and other supplemental relief as the Court may deem appropriate.

17

### SIXTH CLAIM FOR RELIEF
### CONVERSION
### (Seitz)

113.    StableTracker adopts and realleges paragraphs 1 through 70 above as if fully set forth herein.

114.    StableTracker presented shareholder-funds in specific amounts, exceeding $30,000, to Seitz as advances on his draw as a shareholder of StableTracker.

115.    Seitz rejected the shareholders' agreement and has disassociated himself from StableTracker in the scheme outlined above. Yet, Seitz has failed or refused to return the funds furnished to him as a shareholder-draw.

116.    These funds are due and owing to StableTracker, and StableTracker has a right to possession of those funds.

117.    StableTracker has made demands for a return of the identified sums and/or any such demand would be futile.

118.    Seitz's refusal or failure to return those sums is a wrongful exercise of dominion over those funds.

WHEREFORE, STABLETRACKER.COM, INC. requests that the Court enter a judgment in its favor and against Seitz:

    a.   awarding actual damages;

    b.   awarding consequential damages;

    c.   awarding punitive damages;

    d.   awarding pre-judgment and post-judgment interest on any award; and

    e.   granting such further and other supplemental relief as the Court may deem appropriate.

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida – (954) 566-7117

## SEVENTH CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT
## (17 U.S.C. § 101, ET SEQ.)
## (Defendants)

119.    StableTracker adopts and realleges paragraphs 1 through 70 above as if fully set forth herein.

120.    Defendants are exercising dominion over the Software on their servers and other computers, which contains or comprised of confidential, proprietary code developed by StableTracker at great expense and effort.

121.    Defendants' aforesaid actions constitute infringement of StableTracker's copyrights in these works, in violation of the Copyright Act of 1976, 17 U.S.C. § 101 et seq.

122.    StableTracker has notified defendants of their infringement but defendants have failed to cease and desist from maintaining the Software on their web sites, servers, or other computers under their control. Defendants' conduct has been deliberate and willful within the meaning of Section 504 of the Copyright Act of 1976, 17 U.S.C. § 504.

123.    Defendants' aforesaid actions have already caused plaintiff irreparable damage and will, unless restrained, continue to so damage plaintiff, all of which cannot be adequately remedied at law.

WHEREFORE, STABLETRACKER.COM, INC. requests that the Court enter a judgment in its favor and against defendants:

a.      awarding actual damages;

b.      awarding consequential damages;

c.      awarding attorneys' fees and costs as permitted by statute;

d.      awarding pre-judgment and post-judgment interest on any award; and

e.      granting such further and other supplemental relief as the Court may deem appropriate.

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida – (954) 566-7117

## EIGHTH CLAIM FOR RELIEF
## DECEPTIVE AND UNFAIR TRADE PRACTICES
## FLA. STAT. § 501.201 ET SEQ.
### (Defendant)

124.   StableTracker adopts and realleges paragraphs 1 through 70 above as if fully set forth herein.

125.   Defendants have represented that the Software, URL, Logo and registered trademark belong to Seitz and not to StableTracker. Further, defendants has disparaged the goods of StableTracker by willfully making false representations of fact regarding the StableTracker's ownership of its intellectual property (i.e., the Software, URL, Logo, business concept).  These false representations of fact are material and have actually deceived or have a tendency to deceive a substantial segment of the purchasing public.

126.   The public is likely to be damaged as a result of the acts set forth above, and by reason of those acts, defendants have engaged and are engaging in deceptive trade practices or acts in the conduct of a business, trade or commerce, or in the furnishing of services, in violation of Section 501.201 et seq. of FDUTPA.

WHEREFORE, STABLETRACKER.COM, INC. requests that the Court enter a judgment in its favor and against defendants:

a.   awarding actual damages;

b.   awarding consequential damages;

c.   awarding attorneys' fees and costs as permitted by statute;

d.   enjoining further violations and deceptive trade practices;

e.   awarding pre-judgment and post-judgment interest on any award; and

f.   granting such further and other supplemental relief as the Court may deem appropriate.

20

## NINTH CLAIM FOR RELIEF
## COMMON LAW UNFAIR COMPETITION
### (Defendants)

127.   StableTracker adopts and realleges paragraphs 1 through 70 above as if fully set forth herein.

128.   Defendants' unauthorized offering for sale, distribution, advertising and promotion of the Software, including through use of the URL, constitutes a false designation of origin in that the registration was fraudulent, and a false representation that defendants' products are guaranteed by or otherwise connected with plaintiff or meet the same level of quality as plaintiff's products, or that defendants' products are supervised or controlled by plaintiff.

129.   Defendants' acts constitute unfair competition with plaintiff in violation of the common law of Florida.

WHEREFORE, STABLETRACKER.COM, INC. requests that the Court enter a judgment in its favor and against defendants:

a.   awarding actual damages;

b.   awarding consequential damages;

c.   awarding attorneys' fees and costs as permitted by statute;

d.   enjoining further violations and deceptive trade practices;

e.   awarding pre-judgment and post-judgment interest on any award; and

f.   granting such further and other supplemental relief as the Court may deem appropriate.

## TENTH CLAIM FOR RELIEF
## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### (Seitz)

130.   StableTracker adopts and realleges paragraphs 1 through 70 above as if fully set forth herein.

21

131.    StableTracker enjoyed an advantageous business relationship with the U.S. Trotting Association. This relationship was critical to StableTracker's viability, as StableTracker's Software required daily data from the U.S. Trotting Association.

132.    StableTracker invested time and resources and relied on its goodwill and the goodwill of its principal and promoter, Benson, to develop this relationship.

133.    Seitz had no prior relationship with the organization, nor was he otherwise justified in interfering with it.

134.    Seitz's interference included making a cease-and-desist demand upon the U.S. Trotting Association that directly caused a halt the organization's venture and business relationship with StableTracker.

135.    Without resumption of that relationship, StableTracker cannot continue.

WHEREFORE, STABLETRACKER.COM, INC. requests that the Court enter a judgment in its favor and against Seitz:

    a.   awarding actual damages;

    b.   awarding consequential damages;

    c.   awarding punitive damages;

    d.   awarding pre-judgment and post-judgment interest on any award; and

    e.   granting such further and other supplemental relief as the Court may deem appropriate.

**ELEVENTH CLAIM FOR RELIEF**
**NOTICE OF OPPOSITION AND PETITION TO CANCEL TRADEMARK**
**LACK OF *BONA FIDE* INTENT TO USE TRADEMARK**
**(15 U.S.C. § 1051(b))**
**(Seitz)**

136.    StableTracker adopts and realleges paragraphs 1 through 70 above as if fully set forth herein.

22

137.    On information and belief, at the time he filed the opposed application, Seitz lacked a *bona fide* intent to use the mark "stabletracker" (Serial No. 85312458), in commerce in connection with the goods set forth in the respective applications.

138.    On information and belief, Seitz now lacks a *bona fide* intent to use the mark in commerce for the goods set forth in the application.

139.    As more fully alleged above, use of the mark and related Software requires daily data from the U.S. Trotting Association. Upon information and belief, Seitz lacks such a business relationship to effect use of the Software, and consequently, the mark. Seitz will be unable to market the good to prospective customers without having a source of data in place to inform and effect the Software.

WHEREFORE, STABLETRACKER.COM, INC. requests that the Court enter a order finding that Seitz lacks a *bona fide* intent to use the registered trademark, that continued registration of the mark is damaging to Stabletracker, canceling the mark, and granting such further relief as the Court dems just and proper.

## TWELFTH CLAIM FOR RELIEF
## NOTICE OF OPPOSITION AND PETITION TO CANCEL TRADEMARK
## FRAUD
### (Seitz)

140.    StableTracker adopts and realleges paragraphs 1 through 70 above as if fully set forth herein.

141.    On or about May 4, 2011, Seitz electronically signed or directed his legal counsel to sign an application for trademark for "stabletracker"/ www.stabletracker.com (Serial No. 85312458) indicating that he, an individual, was the sole owner of the mark.

142.    Further, as part of that application, Seitz made the representation that he had a *bona fide* intention to use in commerce the mark in connection with specific goods.

143.    With regard to those representations, Seitz made the declaration to the federal government:

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida – (954) 566-7117

---

**Declaration**

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

Signature: /Robert Seitz/   Date Signed: 05/03/2011
Signatory's Name: Robert Seitz
Signatory's Position: Owner

---

Exh. 1.

144.    Seitz committed fraud on the U.S. Patent and Trademark Office by virtue of the knowing, false, material claims regarding his (1) his alleged ownership of the mark; (2) his authorization to register the mark; (3) his intent use the mark in commerce; (4) his representation that no other corporation has the right to use the mark in commerce.

145.    These claims were false when made, and were made for the purpose of hijacking the intellectual property of Stabletracker and extracting "licensing" fees from the company as ransom.

146.    As a result of Seitz's fraud, StableTracker has been damaged.

WHEREFORE, STABLETRACKER.COM, INC. requests that the Court enter a judgment in its favor and against Seitz:

    a.  awarding actual damages;

    b.  awarding consequential damages;

    c.  awarding punitive damages;

    d.  awarding pre-judgment and post-judgment interest on any award; and

    e.  granting such further and other supplemental relief as the Court may deem

appropriate.

<u>Verification</u>

I have read the foregoing Verified Complaint. I have personal knowledge of all the assertions contained therein and believe all the assertions are true and accurate. I understand that I am swearing or affirming under oath to the truthfulness of the claims made in this Verified Complaint and that the punishment for knowingly making false statements includes fines and/or imprisonment.

Dated: June 27, 2011.

**STABLETRACKER.COM, INC.**

By: Joel Benson, Director

Dated: June 27, 2011          Respectfully submitted,

                          /s/ Joshua B. Spector
                          Paul D. Turner (113743)
                          Joshua B. Spector (0584142)
                          Perlman, Bajandas, Yevoli & Albright, PL
                          Museum Tower
                          200 South Andrews Avenue, Suite 600
                          Ft. Lauderdale, FL 33301
                          Telephone: (954) 566-7117
                          Facsimile: (954) 566-7115
                          Email: pturner@pbyalaw.com
                          Email: jspector@pbyalaw.com
                          Attorneys for Plaintiff Stabletracker.com, Inc.

25