STABLETRACKER.COM, INC.,

    Plaintiff,

v.

ROBERT SEITZ and
MY SUPPORT SERVICES GROUP, LLC,

    Defendants.
_____/

# REPORT AND RECOMMENDATION ON
# ENTRY OF PRELIMINARY INJUNCTIVE RELIEF

This matter is before the Court on Plaintiff's *Ex Parte* Emergency Motion for Temporary Restraining Order ("Motion") [D.E. 5], on which Plaintiff now seeks entry of a preliminary injunction. The Court previously heard arguments with respect to this Motion for the entry of a temporary restraining order ("TRO") on June 29, 2011. Based on the Motion, Verified Complaint [D.E. 1] and *Ex Parte* June 29, 2011 hearing, we recommended entering a TRO [D.E. 8], which Judge Ungaro adopted. [D.E. 12]. On July 12, 2011, this Court held an evidentiary hearing on this Motion to convert the TRO into a preliminary injunction. Because Defendants did not appear, the Court only heard Plaintiff's proffer in support of why preliminary injunctive relief is appropriate. For the following reasons, we conclude that Plaintiff's Motion should be **GRANTED** and the Court should issue a preliminary injunction.

The same factors are considered whether deciding a temporary restraining order or a preliminary injunction. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). A party seeking a preliminary injunction must show: 1) a substantial likelihood of success on the merits; 2) irreparable injury; 3) that the injury to plaintiff outweighs the harm an injunction may cause defendants; and, 4) that granting the injunction would not disserve the public interest. *Tefel v. Reno*, 180 F.3d 1286, 1295 (11th Cir. 1999). Where a defendant fails to oppose a motion for preliminary injunctive relief, a court may adopt the factual findings from previously-entered temporary restraining order and conclude that a movant has satisfied its burden. *C&C Carriage Mushroom Co. v. Greenwood Choice, Inc.*, No. 10-62116-CIV, 2011 WL 111741, at *2-3 (S.D. Fla. Jan. 4, 2011). Where a preliminary injunction provides relief beyond prohibitory relief, e.g., maintaining the status quo, and seeks additional, mandatory relief, the movant must meet its burden with clear and convincing evidence. *See Cruz v. Dudek*, No. 10-23048-CIV, 2010 WL 4284955, at *9 (S.D. Fla. Oct. 12, 2010) (citing *Exhibitors Poster Exchange, Inc. v. National Screen Service Corp.*, 441 F.2d 560, 561 (5th Cir. 1971)).

Defendants failed to oppose Plaintiff's Motion or proffer any contrary evidence. Therefore, we adopt the undisputed factual findings from our TRO Report and Recommendation. *See C&C Carriage Mushroom Co.,* 2011 WL 111741 at *2-3. In addition, during the hearing, Plaintiff proffered its Verified Complaint, various corroborating documents and the testimony of its corporate representative Joel Benson ("Benson"). Benson's testimony was credible and fully corroborated

Plaintiff's factual proffer. Altogether, we find that Plaintiff has met its burden of providing clear and convincing evidence and we further conclude that Plaintiff has otherwise satisfied every element necessary to issue preliminary injunctive relief.

However, because Defendants failed to appear, the only sticking point is whether they received notice of the July 12, 2011 evidentiary hearing. At the hearing, Plaintiff asserted that service was attempted by two methods: personal service and electronic mail service. Notably, Defendant's most recent known physical address is a 1993 residence located at 1175 101 Street, #3, Bay Harbor Island, FL 33154. Plaintiff's process server made several failed attempts to serve Defendant Robert Seitz at this location. [D.E. 15-1]. Alternatively, and in light of this stale physical address, the TRO directed Plaintiff to also provide service to Defendants via their known email addresses.

Plaintiff provided Defendants with notice of the evidentiary hearing by emailing a copy of the Report and Recommendation on July 5, 2011 [D.E. 10] and the TRO on July 8, 2011. [D.E. 13]. Because the emails did not "bounce back," there is a presumption that the email addresses are valid and that Defendants received them. *See Gaffigan v. Doe*, 689 F. Supp. 2d 1332, 1342 (S.D. Fla. 2009). This presumption is further supported by recent activity from those email addresses. For instance, on June 22, 2011, Defendant Seitz sent an email to Plaintiff's counsel and carbon-copied Benson, *see* [D.E. 7-1, email from robert@mysupportservicegroup.com]; and, on June 3, 2011, Defendant Seitz sent an

email from robert@stabletracker.com to Benson. *See* Plaintiff's Exhibit 10, July 12, 2011 evidentiary hearing.

Courts have held that under certain circumstances, like those presented here, service by email is an appropriate alternative method. *See McClusky v. Belford High School*, No. 2:09-14345, 2010 WL 2696599, at *3 (E.D. Mich. June 24, 2010) (permitting alternative service by e-mail where plaintiff demonstrated that defendants use the address for business and actively send and receive email from that address, and where an e-mail tracking service confirmed the emailed notice was received and opened); *Chanel Inc. v. Song Xu*, No. 2:09-cv-02610-cgc, 2010 WL 396357, at *4 (W.D. Tenn. Jan 27, 2010) (permitting alterative service by e-mail where the physical address provided in connection with the registration of the defendant's internet domain name was determined to be invalid, but e-mails sent to the defendant were not returned as "undeliverable" and a return receipt was received for each email); *Gaffigan*, 689 F. Supp. 2d at 1342 ("in this case, email was the method of communication used by Defendants in confirming orders placed on its website, and thus, email should be calculated to provide a defendants with notice); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (permitting alternative service by e-mail where the plaintiff located several of the defendant's email addresses, and e-mails sent to those addresses did not "bounce back"); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002) ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, e-mail may be the only means of effecting service of

4

process"); *Int'l Telemedia Assocs., Inc. v. Arjuna Diaz*, 245 B.R. 713, 721 (N.D. Ga. 2000) ("If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them.")). Since Plaintiff has demonstrated that Defendants conduct business through their email addresses, that the emails did not "bounce back" and that Defendant Seitz recently sent emails from these addresses, we find that service by e-mail was appropriate and reasonably calculated to give Defendants notice of the July 12, 2011 hearing.[1]

On July 12, 2011, the Court waited over 30 minutes to provide Defendants ample time to appear. However, neither Defendants nor their counsel appeared at this duly noticed hearing. Defendants were on notice that their failure to appear at the hearing might result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d) and Fed. R. Civ. P. 65. *See* [D.E. 8 at p. 9; D.E. 12 at p. 4]. Accordingly, not only does Defendants' failure to appear result in default, we also find Plaintiff's evidence and Benson's testimony are credible and that this clear and convincing evidence supports our **RECOMMENDATION** that Plaintiff's *Ex Parte* Motion [D.E. 5] should be **GRANTED** and a preliminary injunction should issue. It should also be **ORDERED** and **ADJUDGED** as follows:

---

[1] However, if the Defendants did not, in fact, receive notice of the July 12, 2011 hearing, Defendants may file an appropriate motion explaining as much and seek reconsideration of this Report.

5

# DEFINITIONS

For the purpose of this Preliminary Injunction Order ("Order"), the following definitions should apply:

1. "Software" means any software, source code, or other intellectual property relating to: a) Stabletracker.com, Inc.; b) the domain name or Domain Name www.stabletracker.com; c) those referenced in paragraph 50 of the Verified Complaint; and, d) those referenced in paragraph 51 of the Verified Complaint.

2. "Trademark" means: a) the mark and all related intellectual property relating to the trademark with the registration number 85312458 filed on or about May 4, 2011 with the U.S. Patent and Trademark Office; and, b) the "trademarks" referenced by defendant, Robert Seitz, in the June 17, 2011 letter quoted in paragraph 50 of the Complaint.

3. "Domain Name" means the domain name www.stabletracker.com and all sites, locations, and addresses associated with the uniform resource locator or domain-name.

4. "Hosting Account" means the website hosting or server account including, but not limited to, an account hosted by or through GoDaddy.com, Inc.

5. "Host" means any web-hosting service, domain-name server or authority hosting and/or serving the Domain Name including, but not limited to, GoDaddy.com, Inc.

6. "Registrar" means any web site or domain name registrar service, agent or proxy relating to the Domain Name including, but not limited to, Domains by Proxy, Inc.

7. "Name Server" means any name-server service relating to the Domain Name including, but not limited to, Domaincontrol.com.

**PRELIMINARY INJUNCTION**

1. Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, members, partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, in connection with the Software, the Trademark, the Domain Name, are hereby enjoined from:

    a. Contracting, licensing, transferring, liquidating, converting, encumbering, pledging, loaning, selling, dissipating, disbursing, assigning, granting a lien or security interest or other interest in, or otherwise disposing of the Software, the Trademark, and/or the Domain Name, or any interest therein, wherever located.

    b. Sharing, uploading, sending, copying, distributing, downloading, publishing, posting, exposing, reverse-engineering, deleting, defiling, editing, compiling, creating back-up files of, disseminating, permitting access to, or providing username or password privileges relating to, the Software.

c. Contacting, e-mailing, telephoning, writing, or otherwise communicating with the U.S. Trotting Association.

d. Publishing, uploading, hosting, editing, revising, downloading, deactivating, or otherwise affecting the viewable, concealed, hosted, draft, or other material comprising the website and content of the Domain Name.

2. Defendants, along with the Host, Registrar, Name Server and their respective officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, members, partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, in connection with the Software, the Trademark, the Domain Name, the Hosting Account are hereby directed to:

a. Restore StableTracker's access to the Domain Name and the Hosting Account, including by presenting a functional username and password for the Domain Name.

b. Change the Registrant, Administrative Contact, Technical Contact for the Domain Name to: Stabletracker.com, Inc., 1129 S.E. 4th Avenue, Fort Lauderdale, Florida 33316, United States.

c. Delete, deactivate, and otherwise terminate the access of Defendants to the Domain Name and web hosting service, using reasonable means

and know-how, including the immediate deactivation of all current passwords and usernames.

        d.     Prohibiting Defendants from changing any registration information, rights, privileges, setting, or content relating to the Hosting Account or the Domain Name.

        e.     Verifying compliance with this Order in writing to legal counsel for Plaintiff, Joshua Spector of Perlman, Bajandas, Yevoli & Albright, P.L., via e-mail at jspector@pbyalaw.com by no later than August 1, 2011.

        3.     Defendants and their respective officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, members, partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, in connection with the Software, the Trademark, the Domain Name, the Hosting Account are hereby directed to:

        a.     Transfer the Trademark to Plaintiff using the U.S. Patent and Trademark Office form and a related, required assignment agreement to be approved by this Court. This assignment shall be without prejudice to Defendants' opportunity to petition this Court for a return-transfer of the Trademark as a part of a final judgment in their favor, during the pendency of this action.

b. Within ten (10) business days of this Order, identify all known copies of the Software; permanently destroy all such copies within Defendants' possession, custody, or control. This verification shall be in writing submitted to this Court.

c. Refrain from making any representations to third parties regarding Defendants' alleged rights, title, interest, or ownership in the Software, Domain Name, Hosting Account, Plaintiff, or the intellectual property and/or business models at issue in this action.

d. Refrain from having any contact with the U.S. Trotting Association or other known business-contacts of Plaintiff.

e. Preserve all electronically-stored information required by law, including information that would reasonably constitute initial disclosures, communications, or activity relating to the Domain Name, Hosting Account, Trademark; communications with prospective licensees, or the like. This mandate shall not be construed to diminish or denigrate the obligations under federal or Florida law for Defendants to preserve and back-up all relevant electronically-stored information. To the extent that Defendants have automated or scheduled deletion or purging of electronically-stored information, those machinations shall be halted immediately.

## BOND TO BE POSTED

Plaintiff has posted a bond in the amount of One Thousand Dollars and Zero Cents ($1,000.00), as payment of damages to which Defendants may be entitled for

a wrongful injunction or restraint. Given the evidence before the Court, the Court finds this amount to be sufficient.

## DURATION OF ORDER

This Order shall remain in effect until further order of this Court.

## SERVICE OF THIS ORDER AND RELATED FILINGS

Plaintiff shall serve a copy of this Order by U.S. first class mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of Plaintiff, by private process server, upon any person or entity that may have possession or control of any property, property right, the Software, the Domain Name, or the Trademark, or that may be subject to any provision of this Order.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein, if any. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 20th day of July, 2011.

                                                  _/s/ Edwin G. Torres_
                                                  EDWIN G. TORRES
                                                  United States Magistrate Judge